**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-14238-CV-MARTINEZ/MAYNARD**

**KINGDOMWORKS STUDIOS, LLC,**
**a Florida Limited Liability Company,**

      **Plaintiff,**

**v.**

 **KINGDOM STUDIOS, LLC,**
 **a Delaware Limited Liability Company, and**
 **KINGDOM INC., a Pennsylvania corporation,**

      **Defendants.**
_____/

**REPORT AND RECOMMENDATION**
**ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT**

This is a trademark infringement action between three companies all using some form of the word "KINGDOM" in their names. For ease of reference, I will refer throughout this report to Plaintiff KingdomWorks Studios, LLC as "Plaintiff" or "KingdomWorks," to Defendant Kingdom Studios, LLC (which subsequently changed its name to Kingdom Story Company, LLC) as "KS," and to Defendant Kingdom, Inc. as "Kingdom, Inc."

Plaintiff is an independent film maker, multimedia production studio and publisher that creates, finances, produces and distributes motion pictures, DVDs, videos and books throughout the United States. Plaintiff has used the mark KINGDOMWORKS STUDIOS on videos, films, online content and books since 2012. Plaintiff's videos, films, online content and books are primarily geared towards the Christian community.

In 2018, Plaintiff federally registered the mark KINGDOMWORKS STUDIOS with the United States Patent and Trademark Office ("USPTO"). That same year, Jon and Andy Erwin

(collectively, the "Erwin Brothers"), who also make films for Christian movie-goers, began using the name "KINGDOM STUDIOS" for their entertainment company after the success of their feature film, *I Can Only Imagine*. The Erwin Brothers attempted to register the mark KINGDOM STUDIOS but were told by the USPTO that the mark potentially was confusingly similar to Plaintiff's KINGDOMWORKS STUDIOS mark and a mark owned by a third company, Kingdom, Inc. Plaintiff's attorney also sent a cease-and-desist letter to the Erwin Brothers. Despite USPTO's warning and the cease-and-desist letter, the Erwin Brothers used the KINGDOM STUDIOS mark in promoting their next feature film, *I Still Believe*. They also entered a multimillion-dollar filmmaking and marketing deal with industry giant Lionsgate Entertainment ("Lionsgate").

KS defends its actions by reference to a Trademark License Agreement (the "License Agreement") it entered during that time period with Kingdom, Inc., which has been using the mark KINGDOM to sell products and services to the Christian community since 1982. Kingdom, Inc. federally registered the mark KINGDOM in 2005. Kingdom, Inc.'s federally registered mark covers more than 150 different products and services, including video and multimedia production services, audio production services, DVDs, videos, cassette tapes, and books with religious and secular theme relating to education, business and self-help.

All three parties have filed motions for summary judgment in this case. As the first and longest user of a mark containing the word "KINGDOM," Kingdom, Inc. argues that its mark has priority and it is actually Plaintiff, not Kingdom, Inc. or KS, that is the infringing entity. Plaintiff responds that Kingdom, Inc.'s mark does not have priority in the film making industry because Kingdom, Inc. does not make movies, but primarily sells church supplies, audio/video equipment, and audio/video services through its catalogue and website. Plaintiff therefore asserts that it has priority in the film making industry and KS has infringed on its mark. KS replies that it obtained

the right to use the mark KINGDOM through its License Agreement with Kingdom, Inc., which has priority.  The parties advance differing and sometimes inconsistent views on the likelihood of consumer confusion as a result of their various marks containing the word "KINGDOM."

The motions for summary judgment were referred to me for report and recommendation by the Honorable Jose E. Martinez.  DE 144.  On October 21, 2021, I heard oral argument of counsel for all parties.  I have carefully considered the relevant filings, evidence of record, and oral arguments.  For the following reasons, I recommend that KS' Motion for Summary Judgment (on Plaintiff's Claims), DE 193, be **GRANTED**, Plaintiff's Motion for Summary Judgment (on Kingdom, Inc.'s Counterclaims), DE 221, be **GRANTED**, and Kingdom, Inc.'s Motion for Summary Judgment (on Kingdom, Inc.'s Counterclaims), DE 182, be **DENIED**.

### BACKGROUND

### A.  Plaintiff's Use of the KINGDOMWORKS STUDIOS Mark

KingdomWorks was formed in 2010 by Jeremy Wiles, DE 230 at 14, ¶8, and has continually used the mark KINGDOMWORKS STUDIOS in connection with its goods and services in commerce since at least January 1, 2012.  DE 230 at 6, ¶2.[1]  On November 28, 2017, Mr. Wiles applied for federal registration of the KINDGOMWORKS STUDIOS mark.  The application was published for third parties to oppose during the opposition period.  DE 230 at 6-7, ¶3.  Neither of the Defendants nor anyone else opposed Mr. Wiles' application.  DE 7 at 6, ¶16; DE 17 at 4, ¶16; DE 19 at 3, ¶16.  On July 10, 2018, the application was granted.  KingdomWorks

---

[1]  In or about February 2012, KingdomWorks registered the domain name www.kingdomworksstudios.com and www.kingdomworks.com without objection or complaint from Defendants or any other third party.  KingdomWorks later developed a website associated with these domain names.

was accorded U.S. Trademark Registration Number 5,512,487 for the mark KINGDOMWORKS STUDIOS ("Mark '487").  Mark '487 protects the mark for use on film and video production, media production services, motion picture film production, and multimedia entertainment services in the nature of video and film development, production and post-production services. DE 230 at 6, ¶1;[2] DE 7-2.  KingdomWorks also registered the mark with the State of Florida under Florida Trademark Registration Number 19000000759 for the same usage.  DE 230 at 7, ¶4.[3]

To date, KingdomWorks has used the KINGDOMWORKS STUDIOS mark on films released in theaters, churches and online, as well as on DVDs and online streaming platforms. The primary audience for KingdomWorks' films and videos is the Christian community.  DE 230 at 18, ¶3.

**B.  Defendant Kingdom, Inc.'s Use of the KINGDOM Mark**

Kingdom, Inc. is a Pennsylvania corporation that has sold products and services to churches, religious organizations and individuals under its KINGDOM trademark since 1982.  DE 230 at 7, ¶5; DE 230 at 11, ¶28; DE 230 at 2, ¶3; DE 230 at 12, ¶1; DE 230 at 14, ¶5; DE 230 at 2, ¶2.  Kingdom, Inc.'s products and services are sold throughout the United States by means of its catalogues and website, www.kingdom.com.  DE 230 at 11, ¶28; DE 230 at 2, ¶3; DE 230 at 12, ¶1.  Kingdom, Inc. offers over 10,000 types of goods and services for sale, DE 230 at 7, ¶7, including video production services, audio production services, DVDs, videos, cassette tapes, and books.  Kingdom, Inc.'s president is John R. Berguson.

---

[2] On June 6, 2019, Mr. Wiles assigned all right, title and interest in and to the mark KINGDOMWORKS STUDIOS to KingdomWorks.

[3] The application date and registration date for this mark is the same date of June 24, 2019.

In 2005, Kingdom, Inc. federally registered the mark KINGDOM for over 150 goods and services in U.S. Trademark Registration No. 3,034,139 ("Mark '139").  DE 230 at 2, ¶3. DE 230 at 7, ¶6; DE 230 at 14, ¶6.[4]   The Class 9 goods of Mark '139 for KINGDOM include prerecorded audiocassettes, compact discs and videotapes featuring religious and secular themes relating to education, business and self-help. DE 230 at 2-3, ¶4.   The Class 16 goods of Mark '139 for KINGDOM include "books with religious and secular themes relating to education, business and self-help."  DE 230 at 3, ¶6.   The Class 35 services of Mark '139 for KINGDOM are directed to electronic, telephone and mail order retail services for a variety of products and services, including prerecorded audiocassettes, compact discs and videotapes featuring religious and secular themes relating to education, business and self-help.  *Id.* at ¶ 5.   The Class 41 services of Mark '139 for KINGDOM include "audio production services," "video production services," "video recording and production service," "3D animation," "post production service," "production and presentation of audio/video presentations," and "production of television programs." DE 185-10.

Kingdom, Inc.'s primary customers are churches and pastors.  Kingdom, Inc. has a customer base that includes over 350,000 churches in the United States.  DE 186-2 at 1.

## C. Defendant KS' Use of the KINGDOM STUDIOS and KINGDOM STORY COMPANY Marks

Defendant KS is an entertainment content company formed by the Erwin Brothers that makes feature films for release in theaters.  The Erwin Brothers are known for their very successful film *I Can Only Imagine*.  DE 230 at 13, ¶1.  After the release of *I Can Only Imagine* in 2018, the Erwin Brothers decided to create a new entertainment company.  To determine the availability of

---

[4] The application filing date for US Trademark Registration No. 3,034,139 was March 2003 and claimed date of first use as early as 1987.  DE 230 at 14, ¶6.

the name "KINGDOM STUDIOS" for their new company, they searched for the word "KINGDOM" on the Internet Movie Database (IMDb Pro).  *Id.* at ¶2.  That search yielded over 200 companies that used some derivative of the word "KINGDOM" in their names.  *Id.* at ¶3. They also commissioned a trademark search for the mark KINGDOM STUDIOS. DE 230 at 18, ¶1.  Plaintiff's name came up in both of those searches.  DE 226 at ¶¶65-70.   Nevertheless, KS applied to the USPTO to register the mark KINGDOM STUDIOS.  DE 7-3.

On May 15, 2018, the USPTO issued an Official Office Action to KS advising of a refusal to register the mark KINGDOM STUDIOS based on the existence of Plaintiff's KINGDOMWORKS STUDIOS mark.  DE 226 at ¶71; DE 7-4.  Around six months later, on November 13, 2018, Plaintiff's attorney also sent a cease-and-desist letter to KS regarding their use of the name "KINGDOM STUDIOS."   DE 225 at ¶74.  On January 9, 2019, the USPTO issued a Supplemental Office Action to KS refusing KS' registration of its applied-for mark of KINGDOM STUDIOS based on a likelihood of confusion with Plaintiff's mark under 15 U.S.C. § 1052(d).  DE 226 at ¶73.

On February 25, 2019, KS entered the License Agreement with Kingdom, Inc. for use of the mark KINGDOM.  DE 195-5.  Plaintiff's founder, Jeremy Wiles, met with Jon Erwin in February 2019 to discuss Plaintiff's request that KS not use the word "KINGDOM"  in its name. DE 230 at 17, ¶27; DE 230 at 18, ¶2; DE 226 at ¶75.  During that meeting, Erwin advised Wiles of the License Agreement with Kingdom, Inc.  DE 226 at ¶76.  In March 2019, the Erwin Brothers announced their new company, KINGDOM STUDIOS, at a National Religious Broadcasters trade show.  DE 230 at 17, ¶26; DE 226 at ¶¶77, 78.  KS also entered an agreement with Lionsgate Entertainment Corporation ("Lionsgate") for the marketing, advertising and promotion of the film *I Still Believe*.  The Lionsgate Agreement required KS to promote the launch of KINGDOM

STUDIOS and to build its relationship with the faith community.  DE 226 at ¶82.  The Lionsgate Agreement says its goal is for KS to be "THE imprint label for faith-based pictures."  *Id.* at ¶83.

On February 1, 2019, KS applied to register the mark KINGDOM STORY COMPANY with the USPTO.  DE 230 at 13, ¶4.  On October 15, 2019, the Erwin Brothers formally changed the name of their company from "KINGDOM STUDIOS" to "KINGDOM STORY COMPANY."  DE 230 at 17, ¶28.  On January 3, 2020, KS and Kingdom, Inc. agreed to an Addendum to the License Agreement, which amended a section granting KS rights to use the KINGDOM mark with the term "STUDIOS" as allowed under the original License Agreement and adding the term "STORY."  DE 195-6.

The first trailer for *I Still Believe* was released in or about Fall 2019.  DE 230 at 16, ¶21.  The actual movie was released on March 13, 2020, "the weekend the coronavirus took out every movie theater in the world."  DE 230 at 16, ¶22.  *I Still Believe* was nominated for the People's Choice Award for Drama of the Year.  *Id.* at ¶ 23.

### D.  The Claims, Counterclaims and Motions for Summary Judgment

Plaintiff's operative Complaint seeks relief for (1) federal trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin, false endorsement, and unfair competition under 15 U.S.C. § 1125(a); (3) trademark infringement under Florida law Chapter 495 of the Florida Statutes; (4) common law trademark infringement under Florida law; and (5) common law unfair competition under Florida law.  DE 7 at 14-19.  The Complaint also seeks relief in the form of a declaratory judgment, writ of mandamus decree and certified order to the USPTO regarding KS' then pending application for federal registration of the mark KINGDOM STORY COMPANY

(U.S. Trademark Application Serial No. 88285866).  DE 7 at 19-20; Tr. at 8.[5]  These first six counts are brought against Defendant KS only.  *Id.*  The seventh count of the Complaint, which is the only count seeking relief against both Defendants, requests a declaratory judgment regarding the validity and applicability of the License Agreement.  DE 7 at 21-22; Tr. at 9.

Defendants each assert several counterclaims against Plaintiff KingdomWorks.  Defendant KS seeks declaratory judgments that it has not infringed Plaintiff's mark or engaged in unfair competition and false designation of origin.  DE 17; Tr. at 11.  KS also seeks relief against Plaintiff for dilution under Florida law and asserts an "alternative" claim of federal trademark infringement.  *Id.*  Defendant Kingdom, Inc. seeks relief for federal trademark infringement under 15 U.S.C. § 1114; for federal unfair competition and false designation of origin under 15 U.S.C. § 1125(a); and for cancellation of KingdomWorks' federally registered Mark '487.

Each party has filed a motion for summary judgment.  Defendant KS seeks summary judgment "on all counts" in Plaintiff's Complaint.  DE 193.[6]  Defendant Kingdom, Inc. seeks summary judgment on its counterclaims of infringement and unfair competition against Plaintiff. DE 182.  Plaintiff also seeks summary judgment on Kingdom, Inc.'s counterclaims of infringement and unfair competition.  DE 221.

___

[5] Should KS' application mature into a registration before trial, KingdomWorks requests an order to the USPTO to cancel the registration.  DE 7 at 19-20.

[6] Counsel for KS acknowledged at oral argument that no summary judgment motion has been filed with respect to KS' counterclaims against Plaintiff.  Tr. at 11.  KS' counterclaims may be resolved herein, however, since they are essentially either the reverse of Plaintiff's claims against KS or mirror Kingdom, Inc.'s claims.

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if a "reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48); *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016); *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence or make credibility determinations. *Furcron*, 843 F.3d at 1304; *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). If a genuine dispute of material fact exists, the Court must deny summary judgment. *Skop*, 485 F.3d at 1140.

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion. "'Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.' Thus, a court must consider each motion on its own merits, resolving all reasonable inferences against the party whose

motion is under consideration." *Torres v. Rock & River Food Inc.*, 244 F. Supp. 3d 1320, 1327–28 (S.D. Fla. 2016) (citations omitted).

When a motion for summary judgment is presented to the court, it opens the entire record for consideration, and the Court may enter judgment in favor of the nonmoving party on any grounds apparent in the record, even where there is no formal cross motion. *See Burton v. City of Belle Glade*, 178 F.3d 1175, 1204 (11th Cir. 1999).

## <u>ANALYSIS</u>

Under the Lanham Act, a party is liable for trademark infringement if, without consent, he "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services" which "is likely to cause confusion, or to cause mistake or to deceive." 15 U.S.C. § 1114(1)(a). To prevail on a claim of trademark infringement, a claimant must show (1) claimant's mark has priority; (2) defendant used claimant's mark in commerce; and (3) defendant's mark is likely to cause consumer confusion. *See Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997); *see also Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300-01 (11th Cir. 2001); *Frehling Enterprises, Inc. v. Int'l Select Group, Ind.*, 192 F.3d 1330, 1335 (11th Cir. 1999). As for unfair competition, "[t]he legal standard for unfair competition … and trademark infringement under both the Lanham Act and common law has been held to be essentially the same." *Drew Estate Holding Co., LLC v. Fantasia Distribution, Inc.*, 875 F. Supp.2d 1360, 1365 (S.D. Fla. 2012) (quoting *Knights Armament Co. v. Optical Systems Tech, Inc.*, 568 F. Supp.2d 1369, 1376 (M.D. Fla. 2008)).

Both Defendants argue that Kingdom, Inc. has priority and Plaintiff cannot establish trademark infringement or unfair competition against KS because of the License Agreement

between Defendants.  Because the question of priority is central to the outcome of all the motions, I will consider that issue first in addressing the parties' claims.  I will then address KS' Motion for Summary Judgment (on Plaintiff's Claims) (DE193) before addressing Kingdom, Inc.'s and Plaintiff's Cross Motions for Summary Judgment (on Kingdom, Inc.'s Counterclaims) (DE 182 and DE 221).

## I.     Priority of Use

Kingdom, Inc. owns Mark '139 for the mark KINGDOM.  Kingdom, Inc. applied for registration on March 10, 2003, claiming first use of this mark in 1982.  DE 185-10.  Mark '139 was issued on December 27, 2005.  *Id*.  Kingdom, Inc's mark is "incontestable" pursuant to 15 U.S.C. § 1065 because it "has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce."  DE 186 ¶ 83; DE 227 ¶ 83.  This incontestable status means that the mark's validity is "presumed" subject to certain enumerated defenses which are not applicable in this action.  15 U.S.C. § 1065.  Once a mark has achieved incontestable status, its validity cannot be challenged on grounds that it is merely descriptive, even if the challenger can show that the mark was improperly registered initially.  *Superior Consulting Servs., Inc. v. Shaklee Corp.*, 2021 WL 4438518, at *1 (11th Cir. Sept. 28, 2021) (citing *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 328 (11th Cir. 1989)).

Plaintiff owns Mark '487 for the mark KINGDOMWORKS STUDIOS.  DE 7-2.  Plaintiff's mark "consists of standard characters without claim to any particular font style, size or color."  *Id*.  Plaintiff applied for registration on November 29, 2017, claiming first use on January 1, 2010, and first use in commerce on January 1, 2012.  Plaintiff's application was granted on July 10, 2018.

The first to use a mark on a product or service in a particular market has priority and is considered the "senior user" for purposes of determining trademark protection. *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1023 (11th Cir. 1989) (*citing Junior Food Stores of W. Fla. v. Junior Food Stores, Inc.*, 226 So.2d 393, 396 (Fla. 1969)).  According to the two registrations, Kingdom, Inc. began using the mark KINGDOM approximately 28 years before Plaintiff began using the mark KINGDOMWORKS STUDIOS; Kingdom, Inc. applied for registration approximately 14 years before Plaintiff; and Kingdom, Inc. obtained federal trademark protection approximately 13 years before Plaintiff's application was granted.  Thus, from the face of the registrations, Kingdom, Inc. appears to be the senior user.

Despite this chronology, Plaintiff says Kingdom, Inc. lacks priority for two reasons.  First, Plaintiff argues that the scope of trademark protection is limited to goods and services on which the mark is actually used, and Kingdom, Inc. has not actually used its mark to produce movies. Plaintiff further contends that, even if Kingdom, Inc. has made a few films, its involvement in these films was sporadic, *de minimus*, largely decades old, and/or did not bear the KINGDOM mark since Kingdom, Inc. was not listed in the credits of the movies it produced.

I am not persuaded by Plaintiff's arguments.  First, a comparison of Marks '139 and '487 shows that the marks largely include the same services.  Both registrations cover services relating to video production, post-production, and book publishing.  *Compare* DE 185-10 *with* DE 7-2. The Lanham Act, 15 U.S.C. 1057(b), provides:

> A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.

15 U.S.C. §§ 1057(b); *see also* Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:65; § 32:137; §32:152 (5th ed. 2021) (federal registration serves as prima facie evidence of exclusive rights relating to the goods and services recited in the Certificate of Registration).  It is undisputed that Kingdom, Inc. applied for and obtained its registration first.  "The act of filing an application for registration constitutes constructive use contingent on final registration and confers a nationwide right of priority on the registrant dating back to the application date."  *See Irwin Holdings LLC v. Weigh to Wellness LLC*, 2019 WL 3842800 (S.D. Ala. Aug. 15, 2019) (*citing* 15 U.S.C. §§ 1057(b) and (c), 1115(a)).  Since Kingdom, Inc.'s application was successful, a constructive use date of March 10, 2003 applies to the Kingdom, Inc. mark.  Although section 1057(c)(1) provides that this right of priority does not apply against a party who made actual use of the mark prior to the registrant's constructive use, Plaintiff has provided no evidence that it actually used the KINGDOMWORKS STUDIOS mark prior to March 10, 2003.  Indeed, Plaintiff's registration states that Plaintiff did not begin using its mark in 2010, and did not use the mark commerce until January 1, 2012.  DE 7-2.  Consequently, Mark '139 is prima facie evidence of Kingdom, Inc.'s priority and right to use its mark in connection with video, audio, multimedia and post-production services, and book publishing.  Plaintiff has not rebutted the prima facie case established by Kingdom, Inc.'s registration.

Plaintiff argues that because Kingdom, Inc.'s registration does not include the words "FILM," "MOVIES," and "STUDIO," the protection of Kingdom, Inc.'s registered mark does not extend to film and movie productions.  I need not determine whether a distinction exists between videos, films and movies, however, because the undisputed evidence shows that Kingdom, Inc. has produced all three since 1985.  Plaintiff says Kingdom, Inc. is a church supply company that

sells audio/video equipment, not a "filmmaker" like Plaintiff claims to be.   But, Plaintiff's characterization is not supported by the evidence.   The evidence shows Kingdom, Inc. has used its mark not only to sell church supplies, but also to produce videos, films and movies for its customers for more than thirty-five years.

Kingdom, Inc. started its production department (known over time as Kingdom Productions and Kingdom Media Services) in 1985.   DE 186-2 at 1; DE 185-2 at 3.   The production department has been in continuous operation since that time.   DE 186-2 at 1.   Kingdom, Inc. has produced full length movies, how-to series, documentaries, devotional series, commercials, music videos, films of live events and seminars and television programs.   DE 186-2 at 1; DE 185-3 ;[7] DE

---

[7] At DE 185-3, Mark Hamilton testifies that he was Kingdom, Inc.'s production manager since the 1980s.   He designed Kingdom, Inc.'s production studio and purchased the production equipment. When he designed the studio, he was certified in state-of-the-art movie production technology for that time.   Hamilton was the first employee in Kingdom, Inc.'s productions department.   Over time, the department grew to seven employees.   Hamilton worked on two movies released in theaters for Kingdom, Inc.: *People of Honor* and *The Austin Disaster*.   He and other employees in the Kingdom, Inc. productions department performed all aspects of filming these productions, including camera work, editing, sound, titling, and post-production work.

186-3.[8]  Some of its productions (released on VHS or DVD) include *Salt with Pepper*,[9] *His Kingdom Your Purpose*,[10] *Kingdom Praise*,[11] and *History Makers Training*.[12]  DE 186-3 at 1; DE 185-1 at 34-38.  Kingdom, Inc. also has produced and filmed commercials and instructional videos for its clients' products, as well as for its own audio/video equipment.  DE 186-2 at 3.  From 2003 to 2018, Kingdom, Inc. filmed, produced, and edited hundreds of live seminars.  DE 186-2, Ex. B.  It has also produced thousands of video productions for third parties for fees.  DE 186-2, Ex. A.  Between 2005 and 2018, Kingdom, Inc. filmed, produced and distributed at least five productions each year from various cities in Florida.  DE 186-2 at 4.  Over the years, Kingdom,

---

[8] At DE186-3, Mark Polonia testifies that he was formerly employed by Kingdom, Inc. as head of Kingdom, Inc.'s video production department.  His work for Kingdom, Inc. included all aspects of motion picture production including content creation, writing, camerawork, directing, sound, editing, graphics and post-production.  He performed video production services on hundreds of projects for Kingdom, Inc. including feature films, instructional videos, episodic religious video series, commercials, television pilots, and third party promotional films.  Polonia worked on *People of Honor* and *The Austin Disaster*.  He and other employees in the Kingdom, Inc. productions department performed all aspects of filming these productions, including camera work, editing, sound, titling, and post-production work.  Other Kingdom, Inc. employees who worked on these films included Mark Hamilton, Russ Clark and Peter Bombar, whose names are listed in the credits of these movies.  *See also* DE 185-7; DE 185-8.

[9] *Salt with Pepper* is a 365-part devotional series that includes a short daily video with a dynamic pastor giving a devotional sermon each day.  It was marketed as a VHS set and sold by Kingdom, Inc. through catalogue and telephone.  DE 185-3.

[10] *His Kingdom Your Purpose* is a 10 DVD series produced by Kingdom, Inc. in 2016.  DE 185-1 at 9.

[11] *Kingdom Praise* is a series of seven music videos shot from various locations including Nashville, Tennessee, Houston, Texas, Johannesburg, South Africa, Atlanta, Georgia, and other locations.  It was advertised in Kingdom, Inc.'s catalogue and in various Christian magazines including Charisma Magazine and Ministries Today.  DE 185-1 at 12-13.

[12] *History Makers Training* is a 10 DVD series Kingdom, Inc. produced for a customer in 2016. Kingdom, Inc. did not write the content, but produced the entire series.  Kingdom, Inc. is listed in the credits.  DE 185-6.

Inc.'s production services ranged from "simple projects" like reproducing content onto DVDs or titling for its customers, to more complicated services like filming, pre-production, post-production, script planning and animation, depending on customer needs.  DE 224-10 at 2. Kingdom, Inc. has submitted into evidence copies and lists of numerous videos and DVDs it produced relating to a variety of topics, from devotional videos, to videos on "how to" grow your church or publish Christian books, to instructional videos for Kingdom, Inc.'s audio video equipment, to animated content, to an audio series of sermons for pastors.  DE 185-5.  Most of this content has Kingdom, Inc.'s mark on the cover.  *Id*.  The work produced by Kingdom, Inc. did not always list Kingdom, Inc. in the credits, however.  DE 185-3.  That depended on the wishes of Kingdom, Inc.'s customers, who generally were the content creators and copyright owners for the films and videos produced by Kingdom, Inc.  *Id*.

Regardless, Kingdom, Inc. received national recognition for its production department's work.  In 1997, Kingdom, Inc.'s production department received a national award for producing a film about life flight helicopters.  DE 185-3 at 19-20.  It also received a national award for producing a series about heart transplants and innovative operations in a hospital.  *Id*. at 21. Kingdom, Inc. also marketed its audio/video production services at the annual National Religious Broadcasters Convention every year from 2005 to 2016. DE 186-2 at 4.  Kingdom, Inc. was listed under "Audio/Video Productions" in the annual convention program book, had the largest booth in this industry, and typically had six to eight booth spaces at the convention, more than most other exhibitors there.  *Id*.

In addition to filmed content released on VHS or DVD, Kingdom, Inc. has also produced two full length documentary films released in theaters.  DE 186-2 at 3.  In or around 2001, Kingdom, Inc. produced *People of Honor*, a 110-minute documentary film about World War II

released in theaters.  DE 185-1 at 27-30; DE 185-2 at 5.  *People of Honor* was produced in Kingdom, Inc.'s studio and filmed on Kingdom, Inc.'s equipment.  Kingdom, Inc. handled all production tasks including filming, editing, titling, picture conversion, adding music background, creating masters, and duplicating for distribution.  Kingdom, Inc.'s production managers, Mark Hamilton and Mark Polonia, are listed in the credits for *People of Honor* as producer and associate producer.  DE 185-3; 185-7 (DVD case).  In 2003, Kingdom, Inc. produced *The Austin Disaster: A Chronicle of Human Character*, a 90-minute documentary film also released in theaters.  DE 185-1 at 31-33; DE 185-5; DE 185-8 (DVD Cover).  Kingdom, Inc. provided editing, titling, filming, audio, and post-production services for *The Austin Disaster*.  *Id*.  Two Kingdom, Inc. employees are listed in the credits of *The Austin Disaster*.  DE 185-8.[13]

By comparison, Plaintiff has provided evidence of only one full length feature film – *Genesis Paradise Lost* – produced by Plaintiff and released in theaters.  *Genesis Paradise Lost* is an animated documentary about the creation story released in theaters in 2017.  DE 224-3 at 2; DE 224-4 at 7; DE 185-11 at 10-18.  Plaintiff provided much the same production services for *Genesis Paradise Lost* as Kingdom, Inc. provided for *People of Honor* and *The Austin Disaster* – *i.e.*, Plaintiff was involved in scripting, conceptualization, pre-production planning, filming and the strategy behind distribution of the film.  *Id*.  Plaintiff has not produced any other full length feature films released in theaters.  Plaintiff has produced two short films (each less than fifteen minutes) – *Test of Fire* and *Sing a Little Louder*.  *Test of Fire* is a short political video about voting one's values released in 2012 during election season.  It was shown on Fox News, in churches, and

---

[13] Kingdom, Inc. also provided video production services for the trailers and pre-release video for the movie *Lion of Judah*, an animated feature film released in theaters in 2011 or 2012.  Kingdom, Inc. did not produce the movie itself. DE 185-1 at 16-18.

downloaded or purchased online. DE 224-4 at 2-3; DE 185-11 at 3-6. *Sing a Little Louder* is a short film released in 2015 about churches remaining silent during the Holocaust. It was shown in churches, at the United Nations' headquarters, in a few select theaters, and made available on DVD and Blu-ray. Plaintiff created the content for these videos and handled all video production related services, including editing, post-production, filming and sound. DE 224-4 at 4-5; 185-11 at 6-10. Plaintiff also produces the *Conquer Series*, a documentary released as a 10 DVD set or in streaming format. DE 224-4 at 8-10. The *Conquer Series* aims to help people conquer addiction to pornography. The series was first released on DVD and online platforms in 2012 and was not shown in theaters. Plaintiff created the content, wrote the script, and handled video production, editing, post-production and distribution. Plaintiff also created and sold a *Conquer Series* Workbook, Journal and Leader Guide. DE 185-11 at 45. Over 40,000 churches have used the *Conquer Series*. DE 185-11 at 45. Plaintiff has also produced various other programs released online through a streaming platform owned by Plaintiff's founder, Jeremy Wiles. DE 185-11 at 23. These include *Warpath,*[14] *Rebuilding Ground Zero,*[15] *Battle Scars,*[16] *D-Day of Disclosure,*[17]

---

[14] *Warpath* is a follow up to the *Conquer Series*. It is comprised of 29 half-hour episodes. It centers around understanding identity and portrays messages of hope and redemption. It was released in 2020 on soulrefiner.com, a streaming platform owned by Jeremy Wiles. DE 224-4 at 13-14.

[15] *Rebuilding Ground Zero* centers around repairing damage in one's personal life and getting back on course. It consists of five half-hour episodes. It was released in 2020 on soulrefiner.com, a streaming platform owned by Jeremy Wiles. DE 224-4 at 15.

[16] *Battle Scars* is a show about dealing with trauma. It is five half-hour episodes. It was released in 2020 on soulrefiner.com, a streaming platform owned by Jeremy Wiles. DE 224-4 at 15.

[17] *D Day of Disclosure* has similar themes as Battle Scars. There are five episodes, each episode is thirty minutes, it was never shown in theaters and is only accessible on soulrefiner.com. DE 224-4 at 17.

*Winning your Waterloo,*[18] *Declaring War,*[19] the *Warrior Identity,*[20] *Stronger Together,*[21] *Legacy,*[22] *Happily Even After,*[23] and *Heart-Based Parenting.*[24]  These series generally were produced in or around 2014 and 2015, and most were released in 2020.  Plaintiff has received no revenue for these productions.  DE 185-11 at 27.

Having reviewed both companies' movie making and film production pedigrees, there is no genuine dispute in the record that Kingdom, Inc. actually used its mark in commerce in connection with movie, film and video production services before Plaintiff did.  Plaintiff's assertion that Kingdom, Inc's use is *de minimus* is not supported by the evidence.  Indeed, Kingdom, Inc. has worked on more full-length productions released in theaters than Plaintiff has. Nor does it matter that Kingdom, Inc. did not create its own content for the movies it produced.

---

[18] *Winning Your Waterloo* is five episodes, each episode is thirty minutes, it was not released in theaters, and is available only on soulrefiner.com.  DE 224-4 at 18.

[19] *Declaring War* helps men battle pornography and the damage it causes to families.  It is five episodes, each episode is thirty minutes, it was not released in theaters, and is available only on soulrefiner.com.  DE 224-4 at 19.

[20] *The Warrior Identity* has themes of hope and redemption.  It is five episodes, each episode is thirty minutes, it was not released in theaters, and is available only on soulrefiner.com.  DE 224-4 at 20.

[21] *Stronger Together* is a marriage strengthening series.  It is five or six episodes, each episode is thirty to forty minutes, it was not released in theaters.  DE 224-4 at 21.

[22] *Legacy* focuses on the harmful effects of bad parenting and is about five episodes of 30 minutes each.  DE 224-4 at 21-22.

[23] *Happily Even After* is eight episodes, thirty minutes each.  Plaintiff has also produced a feature film related to *Happily Even After* that Plaintiff hopes to release in theaters or via video streaming in 2020.  DE 224-4 at 23-24.

[24] *Heart Based Parenting* is a documentary series on parenting.  It has not been released yet and is expected to be released on streaming platforms in 2020.  DE 224-4 at 25.

Kingdom, Inc. was contracted by its customers, the content creators, to provide comprehensive production services for these films.  Plaintiff provided much the same services for the one full length film released in theaters it produced, *Genesis Paradise Lost.*  Plaintiff was not the content creator for *Genesis Paradise Lost*, but provided production services.  There is no genuine dispute in the record that Kingdom, Inc.'s mark is first in time, its registration has incontestable status, it actually used its mark in connection with video, film and movie production services, and it therefore has priority in this arena.

Alternatively, even if Kingdom, Inc. never produced a single movie released in theaters, it would still have priority under the "natural expansion" doctrine.  Under the natural expansion doctrine, a trademark owner enjoys protection over goods and services on which the mark has been used, as well as those related goods and services that live within the realm of the natural expansion of its business.  *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001).  Courts use the "source or sponsorship test," which provides protection to a trademark owner, for any product the buying public might reasonably think came from the same source.  *Id*.  Since films are often released both in theaters and on video, the buying public could reasonably believe movies and videos came from the same source.  I do not find a material issue of fact in dispute as to whether films produced on video and films released in theaters are reasonably attributable to the same source.  Movie production services are therefore within the realm of natural expansion of Kingdom, Inc.'s trademark for its media production business.  *See Drew Estate Holdings Co., LLC v. Fantasia Distribution, Inc.*, 875 F. Supp.2d 1360 (S.D. Fla. 2012) (finding that hookah and molasses tobacco were within the realm of natural expansion of trademark for cigar company); *see also E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525 (11th Cir. 1985)

(finding that cognac and brandy are sufficiently related to wine that the public might attribute these products to a single source).

In sum, whether under the language of its trademark registration, the common law or the natural expansion doctrine, Kingdom, Inc. is the senior user and has priority in this case.

## II.     KS' Motion for Summary Judgment on Plaintiff's Claims (DE 193)

Having concluded that Kingdom, Inc. is the senior user and its mark has priority, I next consider whether Kingdom, Inc.'s licensee, KS, also has prior rights by virtue of the License Agreement.   KS argues that it is entitled to summary judgment on Plaintiff's claims because Kingdom, Inc. possesses an incontestable registration under 15 U.S.C. §1065 and KS is in privity with Kingdom, Inc.   According to KS, Kingdom, Inc.'s registration "confers Kingdom and its licensee KS with a nationwide right of priority from Kingdom, Inc.'s March 2003 application filing date against any other person in connection with the goods and services covered by the registration." DE 193 at 14 (citing 15 U.S.C. §1047(c)).

The License Agreement grants KS the right to use the KINGDOM mark in connection with:

> pre-recorded dvds and cds featuring music, television series, **movies and films**; downloadable music sound recording and video recording featuring music, television series, **movies and films**; **video production** and production of audio recording services; multi-media entertainment services in the nature of **recording, production and post production services in the field of films, movies,** television, and music; **production of movies and videos** for the Internet; entertainment services, namely the provision of continuing programs and movies featuring content delivered via the Internet and cable television; provision of non-downloadable films, **movies** and television programs via a video on demand service; and **film** distribution.

DE 195-5 at 2 (emphasis added).

Plaintiff's sole argument against KS' position is the assertion that Kingdom, Inc. "never established prior trademark rights in the movie industry and that the license is therefore a sham and an insufficient shelter for KS to escape plaintiff's claims." DE 225 at 3.[25] As previously discussed, Plaintiff's assertion in this regard is not supported by the evidence. Kingdom, Inc. is the senior user and has priority. In the License Agreement, Kingdom, Inc. grants KS the right to use the KINGDOM mark on its movies, films, and video production services. This language is sufficiently inclusive to cover the rights, products and services at issue in this litigation. As Kingdom, Inc.'s licensee, KS benefits from Kingdom, Inc.'s prior exclusive right to use Mark '139. Because KS is in privity with Kingdom, Inc. through the License Agreement, Plaintiff's claims against KS for trademark infringement and unfair competition must fail. *See 578539 B.C. Ltd. v. Kortz*, 2015 WL 12670488, *15 (C.D. Cal. April 10, 2015) (recognizing that a licensee or assignee in privity with senior user may assert senior user's priority rights and seek cancellation of junior user's mark); *Diarama Trading Co., Inc. v. J. Walter Thompson U.S.A., Inc.*, 2005 WL 2148925, *9-11 (S.D.N.Y. Sept. 6, 2005) (permitting defendants who were in privity with a prior user of plaintiff's registered marks to assert a cancellation counterclaim based on the third party senior user's rights and granting summary judgment on that counterclaim), *aff'd*, 194 Fed. Appx. 81 (2d Cir. Sept. 6, 2006) (unpub.). Plaintiff cannot establish trademark infringement or unfair

---

[25] Plaintiff's motion for summary judgment, however, argues that KS' own involvement in the film industry has been *de minimus* as grounds for requesting that the Court find the license agreement invalid. DE 221 at 20-22. For the reasons discussed here, Plaintiff's request for such relief should be denied.

competition against KS under federal, common or Florida law.  KS' motion for summary judgment as to all of Plaintiff's seven affirmative counts in the Complaint should therefore be granted.[26]

### III.   Plaintiff's and Kingdom, Inc.'s Cross Motions for Summary Judgment on Kingdom, Inc.'s Counterclaims (DE 221 and DE 182)

Having recommended that KS' motion for summary judgment be granted as to Plaintiff's claims, the only issue remaining before me relates to Kingdom, Inc.'s counterclaims for trademark infringement and unfair competition.  Kingdom, Inc. has countersued Plaintiff for infringement of its registered mark under 15 U.S.C. § 1114; unfair competition and false designation of origin under 15 U.S.C. § 1125(a); and cancelation of Plaintiff's registered mark based on priority.  DE 19.

Plaintiff argues that it is entitled to summary judgment on all three of Kingdom, Inc.'s counterclaims because Kingdom, Inc. "cannot meet the threshold requirement" of demonstrating "a protectable right that is relevant to this case which, in essence, is a dispute between two cinematic filmmakers."  DE 221 at 6.  Plaintiff argues further that its mark and Kingdom, Inc.'s mark are not likely to be confused.  DE 221 at 6-15.  Kingdom, Inc. counters that Plaintiff's summary judgment motion should be denied because it is clear that Plaintiff infringed upon Kingdom, Inc's valid mark in a way that is likely to cause confusion among consumers.  DE 183.

---

[26] All of Plaintiff's claims for trademark infringement and unfair competition (numbered I, II, III, V [sic] and VI in DE 7 at 14-19) fail because Plaintiff's state and common law claims "rise or fall with its federal trademark infringement and unfair competition claims."  *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1267 (11th Cir. 2016) (citation omitted).  Here, there is no basis for a federal trademark infringement claim under 15 U.S.C. 1114 nor a federal false designation of origin, false endorsement and unfair competition claim under 15 U.S.C. 1125 because Plaintiff cannot demonstrate priority.  Therefore, Plaintiff is likewise unable to establish claims for trademark infringement under Florida law (DE 7 at 17); for common law trademark infringement (*id.*); and for common law unfair competition (*id.* at 18).

Ultimately, I agree with Plaintiff that Kingdom, Inc. has not demonstrated a likelihood of confusion between its mark and Plaintiff's mark, as explained more fully below.

### A. Federal Trademark Infringement and Unfair Competition

As set forth above, to prevail on a claim of trademark infringement, a claimant must show (1) claimant's mark has priority; (2) defendant used claimant's mark in commerce; and (3) defendant's mark is likely to cause consumer confusion. *Frehling Enterprises*, 192 F.3d at 1335. Similarly, for false designation of origin under 15 U.S.C. § 1125(a), a plaintiff "must show (1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion*, 261 F.3d at 1193.

Here, for reasons discussed above, Kingdom, Inc. has established that it is the senior user with priority of right to incontestable KINGDOM Mark '139, which has been in continuous, national use for nearly four decades. Thus, to establish that it is in fact Plaintiff who has infringed on Kingdom, Inc.'s mark as set forth in Kingdom, Inc.'s counterclaims, Kingdom, Inc. must demonstrate a likelihood of confusion between Kingdom, Inc.'s senior Mark '139 and Plaintiff's junior Mark '487. Consequently, in this section I focus on determining if a genuine issue of likely confusion exists between these two marks.

To determine if likelihood of confusion exists, seven individual factors are considered: (1) the type/strength of the asserted mark; (2) the similarity of the marks; (3) the similarity of the products and services the marks represent; (4) the similarity of the parties' retail outlets (trade channels) and customers; (5) the similarity of the parties' advertising media; (6) the alleged infringer's intent; and (7) actual confusion. *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1239 (11th Cir. 2008); *see also Tana v. Dantanna's*, 611 F.3d 767, 774–75 (11th Cir. 2010). A court

must "fully consider the seven factors, … evaluate the weight to be accorded the individual factors, which varies with the circumstances of the case, and then make its ultimate decision only after doing so." *J-B Weld Co., LLC v. Gorilla Glue Co.*, 978 F.3d 778, 794 (11th Cir. 2020); *see also Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 649 (11th Cir. 2007) (recognizing that application of the multi-factor test "entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the 'overall balance'").  Among the seven factors, "the type of mark and the evidence of actual confusion are the most important." *Planetary Motion*, 261 F.3d at1201 n.22 (citing *Dieter*, 880 F.2d at 326).

Although likelihood of confusion is generally a question of fact, *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 839 n.16 (11th Cir. 1983), the issue may be decided as a matter of law if no genuine disputes of material fact exist.  *Tana*, 611 F.3d at 775 n. 7 (recognizing that the Eleventh Circuit "has routinely 'weighed' the likelihood-of-confusion factors on summary judgment"); *Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000) ("Although likelihood of confusion generally is a question of fact, it may be decided as a matter of law.").

I will address each factor in turn before evaluating the "overall balance" of factors.

### 1.    *Strength of Mark*

The first factor considers the strength or distinctiveness of the claimant's mark.  *Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, The Ecumenical Ord.*, 809 F.3d 1171, 1182 (11th Cir. 2015) (hereinafter, *Sovereign Military*).  It is the second most important factor in the seven-factor analysis.  *Id*.  The strength or inherent distinctiveness of a trademark is determined by viewing the trademark as a whole, including any generic, descriptive,

or disclaimed portions.  *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 362-63 (11th Cir. 1997).   "The stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives." *Frehling*, 192 F.3d at 1335.

A mark's strength is assessed in two ways. *Sovereign Military*, 809 F.3d at 1182.  First, the mark is classified into one of four categories of distinctiveness (1) 'fanciful' or 'arbitrary,' (2) 'suggestive,' (3) 'descriptive,' and (4) 'generic.'"  *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 950 F.3d 776, 783 (11th Cir. 2020); *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007).  A fanciful or arbitrary mark "bears no logical relationship to the product or service it is used to represent" and is therefore the most distinctive. *Welding*, 509 F.3d at 1357.  A suggestive mark "refers to some characteristic of the goods, but requires a leap of the imagination to get from the mark to the product." *Id.* at 1357-58.  A descriptive mark "identifies a characteristic or quality of the service or product." *Id.* at 1358.  And a generic mark, which is not entitled to trademark protection, is simply "a mark that suggests the basic nature of the product or service." *Tana*, 611 F.3d at 774.

The two strongest types of marks—arbitrary and suggestive—are "inherently distinctive because their intrinsic nature serves to identify a particular source of a product and are generally entitled to trademark protection."  *Frehling*, 192 F.3d at 1335 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)).  For example, the term "Kodak" is arbitrary as it relates to cameras because it has nothing to do with taking photographs, and the term "penguin" is suggestive as a mark for refrigerators because it raises in the mind a suggestion of the Artic or cold environment. *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1183-84 (5th Cir. 1980).  In contrast, a descriptive mark describes "a particular characteristic or quality of" of the product or service. *Reinalt-Thomas Corp. v. Mavis Tire Supply, LLC*, 391 F. Supp. 3d 1261, 1268 (N.D. Ga. 2019).

Such marks are not inherently distinctive.  For example, "Vision Center" is descriptive in reference to a place where one purchases eyeglasses, or "EVERREADY" with reference to batteries or light bulbs. *Soweco*, 617 F.2d at 1183–84. A descriptive mark can, however, "become sufficiently distinctive to enjoy trademark protection by acquiring secondary meaning." *Tana*, 611 F.3d at 774. A descriptive mark acquires "secondary meaning when the primary significance of the term in the minds of the consuming public is not the product but the producer." *Id.* (citing *Welding*, 509 F.3d at 1358).

In this case it is undisputed that Mark '139 is incontestable under the Lanham Act, 15 U.S.C. § 1115, 15 U.S.C. § 1065.  "A mark's strength is enhanced if it has incontestable status." *Fla. Int'l Univ.*, 830 F.3d at 1257. Specifically, "an incontestable mark is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark." *Sovereign Military*, 809 F.3d at 1183.  Notably, however, even an incontestable mark may not be worthy of protection if it is otherwise weak or if another mark is not likely to cause confusion with it. *See FIU*, 830 F.3d 1242, 1257 (11th Cir. 2016) (finding defendant successfully "rebutted the presumption of strength by showing extensive third-party use of the mark"); *Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1259 (M.D. Fla. 2009) (noting that incontestability of mark is only one factor to consider in determining a mark's strength).

In my view, the KINGDOM mark falls somewhere between suggestive and descriptive. The parties agree that "[b]oth secular and non-secular dictionaries define 'kingdom' to mean, among other things, the 'sovereignty' or 'kingship' of God." DE 230 at 15, ¶16. This is consistent with the Merriam-Webster dictionary definition of "kingdom" as "the eternal kingship of God" or "the realm in which God's will is fulfilled." *Merriam-Webster Dictionary*, "kingdom," available at:  https://www.merriam-webster.com/dictionary/kingdom.  Here, the mark KINGDOM could be

said to describe Kingdom, Inc.'s business, which is to provide faith-based goods and services in furtherance of promoting God's kingship or sovereignty here on earth.  This comports with Kingdom, Inc.'s own characterization of its religious-themed business.  Like "vision center" describes a place where one buys eyeglasses, Kingdom, Inc. describes an entity that furthers God's kingdom.  In that sense, the KINGDOM mark is descriptive.  At the same time, consumers – particularly those unfamiliar with the religious connotation of the word "KINGDOM" – will need to use their imaginations to determine the nature of the business at issue.  Thus, I conclude that the mark KINGDOM is at the least descriptive with second meaning, and more likely a suggestive mark.

After considering the mark's classification, courts "then consider the degree to which third parties make use of the mark." *Sovereign Military*, 809 F.3d at 1182 (quoting *Frehling*, 192 F.3d at 1336).  "The less that third parties use the mark, the stronger it is, and the more protection it deserves."  *Id*.  Plaintiff challenges the strength of the KINGDOM mark by pointing to evidence of extensive third-party use of the word "KINGDOM" in marks relating to faith-based goods and services in the entertainment industry.  The record contains undisputed evidence of at least 30 different users of the term "KINGDOM" in the faith-based entertainment industry, including but not limited to the following companies:  Kingdom Entertainment (independent faith-based film, television, and book distributor); Kingdom Reign Entertainment (a boutique entertainment company that creates, produces, writes, pitches, and develops television show concepts for major networks from pre to post-production);  Kingdom Sight Studios (a studio company that creates faith-based films); Kingdom Media Studios (provides faith-based media services); Kingdom Palace Productions (family-friendly focused entertainment company); Kingdom (American television series); Kingdom First Solutions (sells church management software); Kingdom Sound

Boutique Sound Services (family owned boutique sound company); The Kingdom Voice (a faith-based podcast);  Kingdom Voice Publishing (dedicated to helping Christian authors publish their written works).  DE 96-29 at 4-16, ¶8(a)-(ee).  A great majority of these entities own federally registered trademarks.  *Id.*  In addition, the parties agree that when the Erwin Brothers searched the word "KINGDOM" in IMBb Pro, over 200 companies using some derivative of the word "KINGDOM" in their names were found.  DE 230 at 13, ¶¶1-3.  Such extensive third-party use is unsurprising given the discussion above regarding the definition and common understanding of the term "KINGDOM."

I agree with Plaintiff that the above unrefuted evidence of hundreds of other users of the term "KINGDOM" in the faith-based and/or entertainment industry means that Kingdom, Inc. operates in a "crowded field" with widespread third-party use, which diminishes the mark's strength.  *See Homes & Land*, 598 F. Supp. 2d at 1261 (in case challenging a magazine's use of a similar mark, 18 uses of a similar mark in other publications, coupled with "numerous websites" using similar words, constituted "widespread third-party use" and weighed against the mark's strength); *see also*  McCarthy*, Trademarks and Unfair Competition,* § 11:85 (5th ed. 2017) ("In a crowded field of look-alike marks, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd.").  Thus, I find that third-party use of similar marks has diminished the strength of the KINGDOM mark such that this factor weighs against a finding of a likelihood of confusion.

### 2.    *Similarity of the Marks*

This second factor requires me "to compare the plaintiff's marks with the defendant's marks and measure their similarity."  *Sovereign Military*, 809 F.3d at 1186.  "The greater the similarity, the greater the likelihood of confusion."  *Fla. Int'l Univ.*, 830 F.3d at 1260.  The marks

need not be identical to support a finding that consumer confusion between them is likely.  The "key" question is whether the marks are "sufficiently similar 'to deceive the public.'"  *Id.* (quoting *Saxlehner v. Eisner & Mendelson Co.*, 179 U.S. 19, 33 (1900)).  In evaluating the similarity of marks, "the court must consider the overall impression created by the marks, including a comparison of the appearance, sound and meaning of the marks, as well as the manner in which they are displayed."  *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 939 (11th Cir. 2010); *Fla. Int'l Univ.*, 830 F.3d at 1260 ("We consider the overall impression created by the marks, and do not simply compare isolated features.").  "If a trademark operates in a crowded field of 'similar marks on similar goods or services,' slight differences in names may be meaningful because consumers "will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other.'"  *Fla. Int'l Univ.*, 830 F.3d at 1260 (quoting 2 McCarthy § 11:85).

Similarity is "not a binary factor but is a matter of degree."  *FCOA, LLC v. Foremost Title & Escrow Services, LLC*, 416 F. Supp.3d  1381, 1390 (S.D. Fla. 2019) (quoting *Sovereign Military*, 809 F.3d 1171, 1187 (11th Cir. 2015)).  "The proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties."  *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368 (Fed. Cir. 2012).  Moreover, the test is not whether most consumers would be confused by the marks' similarity, but whether "an appreciable number" of consumers would be confused.  *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 979 n.22 (11th Cir. 1983).

Here, both marks use the base word "KINGDOM" and the intended meaning of both marks is to use the term in a religious or faith-based context.  The marks are not identical, however.  *See,*

*e.g., USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*, 165 F. Supp.3d 1256, 1270 (S.D. Fla. 2016) ("The likelihood of confusion is greater when an infringer uses the exact trademark."). Kingdom, Inc.'s mark consists only of the word "KINGDOM," while Plaintiff's mark adds the modifier "WORKS" at the end of KINGDOM and the additional word "STUDIOS." In comparing how the marks "are encountered by the consumers in the marketplace,"[27] I note that Kingdom, Inc.'s logo is often placed on the covers of videos produced by Kingdom, Inc., on the face of the DVDs themselves, and on its catalogue. The logo contains the word "KINGDOM", with a flying dove on top of the "O." *See, e.g.*, DE 222-7 at 40-54; DE 222-8 at 161, 184; DE 222-9 at 8. In contrast, Plaintiff's logo is placed on its online content, on the cover of the *Conquer Series* DVD set materials and within the content of its films. Plaintiff's logo consists of the word "KINGDOMWORKS" in large, block, bolded font, with the word "STUDIOS" in smaller, less outstanding font beneath it. The overall impression created by the two marks is different. They both contain the word "KINGDOM," but Plaintiff's mark includes additional words and their visual appearance as actually presented in the marketplace differs. Since the marks at issue here operate in a crowded field, I find that the inclusion of the modifier term "WORKS" and the word "STUDIOS," as well as the different ways the logos are depicted when the marks are encountered

---

[27] *Zaletel v. Prisma Labs, Inc.*, 2017 WL 877302, at *4 (D. Del. Mar. 6, 2017) ("Because the test is likelihood of confusion by consumers in the marketplace, the degree of similarity of the marks is assessed by looking at the marks as encountered by consumers in the marketplace."); *Isle of Capri Casinos, Inc. v. Flynt*, 2016 WL 6495380, at *5 (C.D. Cal. Nov. 1, 2016) ("To address the similarity of the marks, a court considers the 'sight, sound, and meaning' of the marks, taking into consideration how the marks are encountered in the marketplace."); *YouFit, Inc. v. Pleasanton Fitness, LLC*, 2013 WL 521784, at *5 (M.D. Fla. Feb. 11, 2013) ("In deciding similarity, the court must 'not look just at the typewritten and aural similarity of the marks, but how they are presented in the marketplace.'") (quoting *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 962 (2d Cir. 1996)).

by consumers, is sufficient to differentiate the two marks.  Thus, this second factor also weighs against a finding of a likelihood of confusion.

### 3.    *Similarity of the Products and Services the Marks Represent*

The third factor, similarity of services, "requires a determination as to whether the products [or services] are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." *Frehling*, 192 F.3d at 1338.  The test is not whether the services can be readily distinguished, but rather whether the services "are so related in the minds of consumers that the get the sense that a single producer is likely to" offer both services. *Frehling*, 192 F.3d at 1338.  "The greater the similarity between the products and services the greater the likelihood of confusion." *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1507 (11th Cir. 1985).

Plaintiff argues that "[w]hile Defendant [Kingdom, Inc.] has, at times, advertised the capability to provide technical services such as audio and video editing, these services are of a very different character than the film and movie products written, scripted, casted, directed, produced, distributed and sold by Plaintiff." DE 221 at 10.  As previously discussed in the section on priority of use, I disagree.  Plaintiff attempts to create a distinction where none exists.  A review of the evidence shows that both Plaintiff and Kingdom, Inc. have used their marks to sell substantially similar products and services in the United States.  More specifically, Kingdom, Inc. has produced evidence of numerous video products and services involving its video production department, which has been in continuous operation since 1985.  DE 186 at 7-8, ¶¶ 67-68, 70-75. Kingdom, Inc.'s productions range from religiously themed videos and movie trailers to multi-part devotional series and recorded live seminars.  *Id*.  Notably, Kingdom, Inc. produced two full length films – "People of Honor" and "The Austin Disaster of 1911:  A Chronicle of Human Character"

– which were both "shown in theatres." DE 186 at 8, ¶¶ 72-73.  These products and services offered by Kingdom, Inc. are markedly similar to the religiously themed films, videos and online content offered by Plaintiff.  This factor weighs in favor of a likelihood of confusion.

### 4.     Similarity of the Parties' Customers and Retail Outlets

The fourth factor considers "where, how, and to whom the parties' products are sold." *Fla. Int'l Univ.*, 830 F.3d at 1261.  "Dissimilarities between the retail outlets for and the predominant customers of plaintiff's and defendant's goods lessen the possibility of confusion." *Frehling*, 192 F.3d at 1339.  Notably, the parties do not have to be in direct competition to cause a likelihood of confusion.  *Id.*  Similarly, "[t]he parties' outlets and customer bases need not be identical, but some degree of overlap should be present." *Id.*

Although the parties' video production customers are similar in that both Kingdom, Inc. and Plaintiff cater to the Christian religious market, I note that Plaintiff's customers are generally film watchers whom Plaintiff wants to purchase, download and/or otherwise view Plaintiff's cinematographic content, which Kingdom, Inc.'s video production customers are generally content creators who come to Kingdom Inc. to produce their work.  Thus, the "customers" of these two entities are slightly different in that regard.  However, Plaintiff's *Conquer Series* DVD set, Workbook and Leader Guide have been sold to 40,000 churches.  Kingdom, Inc.'s numerous self help DVDs, videos and books have been sold to 350,000 churches.  That presents a significant degree of overlap which weighs in favor of a likelihood of confusion.

In terms of trade channels, Kingdom, Inc. sells its products and services through its catalogues and on its website, www.kingdom.com.  Plaintiff sells its products online through soulrefiner.com (a streaming platform owned by its founder Jeremy Wiles) and on its website, www.kingdomworksstudios.com.  Both parties have released on or two movies "in theaters" but

the evidence is sparse regarding the geographical locations or number of theaters. Plaintiff's content has also been sold on streaming platforms such as Netflix, Apple+, Googleplay and Amazon Video. The fact that each company sells its goods on its own website and through its own channels cuts against likelihood of confusion. *Tana*, 611 F. Supp.3d 1265, 1280 (S.D. Fla. 2015) (stating that the "similarity" that the two parties maintained websites would "dispel rather than cause confusion … because the websites are separate and distinct, suggesting two completely unrelated business entities."); *Fla. Int'l Univ.*, 91 F. Supp. 3d 1265, 1280 (S.D. Fla. 2015) (stating that the fact that both universities advertised on their own respective websites, in addition to several other media sources, made it more likely consumers would believe the two schools were "distinct enterprises"), *aff'd* 830 F.3d 1242 (11th Cir. 2016). Thus, the similarity of the parties' trade channels factor weighs against likely confusion.

### 5. *Similarity of Advertising Media*

This fifth factor "compares the parties' advertisements and the audiences they reach." *Sovereign Military*, 809 F.3d at 1188. The parties' advertisements need not be identical to cause confusion; instead, "the standard is whether there is likely to be significant enough overlap in the audience of the advertisements that a possibility of confusion could result." *Fla. Int'l*, 830 F.3d at 1262.

Here, this factor weighs neither for nor against either party. It is neutral. Plaintiff has not demonstrated that the advertising media of the two marks is so different as to weigh in Plaintiff's favor. As Plaintiff acknowledges, both Kingdom, Inc. and Plaintiff attended and advertised at the same annual National Religious Broadcasters Conference. DE 222 at 7, ¶¶ 49, 51. Consistent with most businesses these days, both parties have a solid online presence and both advertise their products and services at www.kingdomworks.com and www.kingdom.com, respectively.

### 6.    *Plaintiff's Intent*

This sixth factor asks if the alleged infringer "adopted its mark with the intent of deriving benefit from the reputation of the" infringed mark's owner.  *Sovereign Military*, 809 F.3d at 1188. This factor "alone may be enough to justify the inference that there is confusing similarity." *Fla. Int'l*, 830 F.3d at 1263.  In examining intent, I must determine whether the alleged infringer "had a conscious intent to capitalize on the [opposing party's] business reputation, was intentionally blind, or otherwise manifested improper intent" when using its mark.  *Custom Mfg.*, 508 F.3d at 648.

Here, I find no evidence of mal-intent on Plaintiff's part.  There is zero indication that Plaintiff adopted the KingdomWorks Studios mark to capitalize off Defendant Kingdom's goodwill.  There is no indication that either Plaintiff or its founder, Jeremy Wiles, was aware or had heard of Kingdom, Inc. when it adopted its KINGDOMWORKS mark.  Importantly, "the absence of such evidence does not avoid a ruling of likelihood of confusion." *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1462 (Fed. Cir. 1991). This factor is neutral in my analysis.

### 7.    *Actual Confusion*

Evidence of actual confusion is the most significant of the seven factors.  *Frehling*, 192 F.3d at 1340 ("It is undisputed that evidence of actual confusion is the best evidence of a likelihood of confusion."); *see also Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 936 (11th Cir. 2010) (of all the factors in the likelihood of confusion analysis, this seventh factor of actual confusion is "the most weighty consideration.").  Conversely, a lack of evidence of actual confusion weighs heavily against a finding of likelihood of confusion.  "If consumers have been exposed to two allegedly similar trademarks in the marketplace for an

adequate period of time and no actual confusion is detected either by survey or in actual reported instances of confusion, that can be powerful indication that the junior trademark does not cause a meaningful likelihood of confusion." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1362 (11th Cir. 2019) (quotation omitted); *Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999) ("Following Eleventh Circuit guidance, the Court must give substantial weight to the fact that the Plaintiff is unable, at this time, top prove actual confusion."). Courts in the Eleventh Circuit accord "substantial weight to evidence that actual customers were confused by the use of a mark as opposed to other categories of people." *Aronowitz*, 513 F.3d at 1239 (quotation marks and citation marks omitted). I must look "not only to the existence" of actual confusion, "but also to the extent of such confusion." *Tana*, 611 F.3d at 779. The amount of evidence needed to show actual confusion "is relatively small." *FIU*, 830 F.3d at 1264 (quoting *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 937 (11th Cir. 2010)).

Here, Kingdom, Inc., which has the burden of proof on its counterclaims, offers no evidence of actual confusion in the public about its mark versus Plaintiff's mark. This lack of evidence is telling because the marks have co-existed in the Christian video and film production industry for almost a decade. Kingdom, Inc. has used its mark on various films and videos sold to 350,000 churches since the 1980s. Plaintiff has used its mark in commerce since 2012, most notably on the *Conquer Series* DVD set and accompanying workbooks sold to 40,000 churches. Despite this use in the same or similar market, Kingdom, Inc. was unable to locate a single instance of actual confusion in the public between the two companies. DE 230 at 12 (Kingdom, Inc. agreeing to the following: "After diligent search of its company records as required by this Court's Order on Plaintiff's Motion to Compel, Defendant Kingdom Inc. stated that it did not have

evidence constituting, referring to, relating to, mentioning any instances of confusion or mistake by the public as to the affiliation, connection or association of Plaintiff and Defendants or their respective marks, products or services.").

Instead of proffering evidence of actual confusion, Kingdom, Inc. relies exclusively on Plaintiff's proof of actual confusion between Plaintiff and KS when KS was using the mark Kingdom Studios.  In opposing KS' motion for summary judgment, Plaintiff provided the names of 32 people who communicated with Plaintiff after the release of KS' movie *I Can Only Imagine* "in a state of confusion regarding Plaintiff's identity and its mistaken association with" KS.  DE 225 at 14.  Plaintiff provides evidence of that confusion in the record at DE 195-35.  Plaintiff contends that the similarity between the KingdomWorks Studios mark and the Kingdom Studios mark caused that actual confusion.  Plaintiff further contends that the massive advertising and marketing done by KS in partnership with movie-making giant Lionsgate "somewhat eclipsed Plaintiff's identity in the market," and caused "reverse confusion" in the entertainment industry and among Christian movie-goers.  DE 225 at 14-15.

Kingdom, Inc.'s attempt to rely on confusion between Plaintiff and KS to show confusion between Kingdom, Inc. and Plaintiff is unavailing.  Evidence of actual confusion between the marks used by Plaintiff and KS does not demonstrate actual confusion between the marks used by Plaintiff and Kingdom, Inc.  In fact, just the opposite is true.  The fact that job seekers, screenwriters and investors contacted Plaintiff believing Plaintiff to be KS after the release of KS' film *I Can Only Imagine*, while no one has ever contacted Plaintiff or Kingdom, Inc. with confusion between their respective companies is persuasive evidence that, while there may have been actual confusion between KingdomWorks Studios and Kingdom Studios, there was never any actual confusion between KingdomWorks and Kingdom, Inc.  The lack of actual confusion

between these two marks over the past ten years is powerful evidence weighing against likelihood of confusion.

**8.**   *Overall Balance*

Here, most of the applicable factors weigh against a finding of likelihood of confusion between Kingdom, Inc.'s mark and Plaintiff's mark, including the two factors the Eleventh Circuit has deemed most important – strength of the mark and actual confusion.  Kingdom, Inc.'s mark operates in a crowded field with many others using some form of the word Kingdom on faith based and/or entertainment products, goods or services.  That crowded field operates to diminish the strength of the KINGDOM mark.  In addition, there is no evidence of actual consumer confusion between Plaintiff and Kingdom, Inc. although they have provided similar products and services to the faith-based community for almost ten years.   For summary judgment purposes, the question is whether on the record presented, no reasonable jury could return a verdict for Kingdom, Inc. on Kingdom, Inc's counterclaims.  *See* DE 182 at 5 (basing its request for "summary judgment o[n] infringement, unfair competition, and cancellation" on the likelihood of confusion between KINGDOMWORKS and KINGDOM).  I answer that question affirmatively, given the balance of the factors, particularly the two most important.  I conclude that Kingdom Inc. has not met its burden.  Accordingly, Plaintiff's motion for summary judgment on Kingdom, Inc.'s counterclaims (DE 221) should be granted, and Kingdom, Inc.'s motion for summary judgment on Kingdom, Inc.'s counterclaims (DE 182) should be denied.

**<u>CONCLUSION</u>**

For all the above reasons, I respectfully recommend that:

1.   Defendant Kingdom, Inc.'s Motion for Summary Judgment, DE 182, be **DENIED;**

2. Defendant KS' Motion for Summary Judgment against Plaintiff, DE 193, be **GRANTED;** and

3. Plaintiff's Motion for Summary Judgment against Defendant Kingdom, Inc., DE 221, be **GRANTED.**

4. As a result, I recommend that final judgment be entered in favor of both Defendants and against Plaintiff on all of Plaintiff's seven affirmative claims for relief (Counts I through VII of Plaintiff's Amended Complaint, DE 7), that final judgment be entered in favor of Plaintiff and against Kingdom, Inc. on all of Kingdom, Inc.'s three counterclaims against Plaintiff (Counts I through III of Kingdom Inc.'s Counterclaims, DE 19), that final judgment be entered in favor of KS and against Plaintiff on the first two of KS' four counterclaims against Plaintiff for a declaratory judgment of non-infringement and no unfair competition under federal law (KS' Counterclaims Counts I and II, DE 17), and that counts III and IV of KS' Counterclaims be dismissed.

## <u>NOTICE OF RIGHT TO OBJECT</u>

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Jose E. Martinez.  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Henley v. Johnson*, 885 F.2d 790,

794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).  Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 19th day of November, 2021.

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE